UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LOIS JANE CAWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-079-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Lois Jane Cawood (hereafter, "the plaintiff" or "Cawood") and Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner.") [Record Nos. 13, 14]  Cawood argues that the Administrative Law Judge ("ALJ") erred in concluding that she was not disabled within the meaning of the Social Security Act. Specifically, she asserts that the ALJ failed to properly consider the opinion of her treating physician and to properly evaluate her credibility.  Cawood requests an award of benefits in her favor or, alternatively, that the matter be remanded for further administrative proceedings. The Commissioner contends the ALJ properly evaluated the evidence of record and that the ALJ's decision should be affirmed.  She further contends that the ALJ's decision is supported by substantial evidence.

For the reasons that follow, the plaintiff's motion will be granted and this matter will be remanded for further proceedings.

**I.**

Cawood filed a Title II application for a period of disability and disability insurance benefits, ("DIB") on October 26, 2012, alleging an onset of disability of December 30, 2011. [Administrative Transcript, hereinafter "Tr.," 21]  After being denied benefits initially and on reconsideration in 2013, Cawood requested an administrative hearing before an ALJ.  *Id.*  On October 7, 2014, Cawood appeared before ALJ Tommye C. Mangus in London, Kentucky.  *Id.*  ALJ Mangus found that Cawood had severe impairments of fibromyalgia, prolapsed bladder, major depressive disorder (chronic, mild), dysthymic disorder, and anxiety disorder.  *Id.* at 23.  ALJ Mangus determined, however, that Cawood did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  *Id.* at 24 (citing 20 C.F.R. §§ 1520(d), 404.1525, 404.1526).

After considering the entire record, the ALJ determined that Cawood had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except she could not climb ladders, ropes or scaffolds and could perform no more than occasional kneeling, crouching, crawling or climbing of ramps and stairs.  The ALJ also determined that Cawood should avoid concentrated exposure to vibration and workplace hazards.  Next, the ALJ found that Cawood was able to understand, remember and carry out simple instructions and tasks, and tolerate occasional, gradually introduced changes in the workplace.  *Id*. at 26.  The ALJ determined that, although Cawood was unable to perform her past relevant work as a bookkeeper or accounts clerk, there were jobs existing in significant numbers in the national economy that Cawood was able to perform.  *Id.* at 29.  Specifically, the ALJ found that Cawood could work as a ticket taker, an office helper, and a mailroom

clerk. *Id.* at 30. Accordingly, the ALJ determined that she had not been under a disability through December 30, 2011. *Id.*

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine

whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Although the plaintiff alleged some psychological impairments, her appeal focuses on the ALJ's disposition regarding her claims of physical pain and disability. The pertinent medical evidence of record is summarized as follows:

Dr. Naushad Haziq performed a consultative examination on February 7, 2013. [Tr. 328] Dr. Haziq noted that Cawood appeared comfortable while seated and supine. While

Cawood had no movement limitation, she reported pain during all movements. The examination was otherwise unremarkable, except that Cawood demonstrated "eight paired points and four control point tenderness for fibromyalgia." *Id.* at 331. Dr. Haziq did not provide an opinion regarding Cawood's functional capacity.

Dr. Paul Saranga reviewed Cawood's file on September 3, 2013. [Tr. 74] He opined that, despite Dr. Haziq's findings, Cawood's impairments did not significantly impact her ability to perform basic work activities. *Id.* In support, Dr. Saranga cited the fact that Cawood's strength and range of motion were normal, and that she was able to stand on one leg without difficulty. *Id.* Further, Cawood was able to complete self-care independently and performed light house work with little or no assistance. *Id.*

Dr. Jackie Maxey, Cawood's treating physician of more than ten years, submitted a "residual functional capacity questionnaire" on July 28, 2014. [Tr. at 443–45] Maxey reported that Cawood had fibromyalgia and that, due to the resultant generalized muscular pain, her ability to sit, stand, and walk was significantly limited. *See id.* He believed Cawood would need to take unscheduled breaks every 10 to 15 minutes during an eight-hour workday. *Id.* Maxey opined that Cawood could occasionally lift less than 10 pounds, but her ability to handle and reach were severely limited. *See id.* Finally, Maxey concluded that Cawood was not physically capable of working eight hours per day, five days per week, on a sustained basis. *Id.* at 445.

An ALJ must give a treating source's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give controlling weight to the opinion of a treating source, he

must balance the following factors in determining what weight to give it: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Here, it appears that the ALJ rejected Dr. Maxey's opinion entirely, having concluded that it was unsupported by the record and Dr. Maxey's "generally benign clinical records." [Tr. 28] ALJ Mangus noted that Dr. Maxey had treated Cawood only with various medications such as Lyrica, Lortab, and Lunesta and that there was no evidence of specialist treatment. [Tr. 23] The ALJ also pointed to the lack of neurological deficits and the normal results upon objective testing. *Id.* The Sixth Circuit has acknowledged, however, that fibromyalgia patients typically "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244. "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id.*

Even when inconsistent with other evidence, a treating source's medical opinion is not automatically rejected and should be weighed using the factors in 20 C.F.R. § 404.1527. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Further, while the ALJ considered Dr. Haziq's evaluation and Dr. Saranga's opinion, it is unclear what weight, if any, the ALJ gave to these reports. [*See* Tr. 28] ALJ Mangus commented that, based on Cawood's treatment for fibromyalgia and history of prolapsed bladder, he "depart[ed] from the state agency" and limited Cawood to a restricted range of light work. *Id.*

Based on the ALJ's written opinion, it is unclear how the ALJ relied on the medical evidence of record in forming Cawood's RFC.  Although it is permissible, under certain circumstances, to give more weight to the opinions of agency physicians than those of treating physicians, the ALJ did not state the amount of weight he gave to the opinion of any physician when it came to Cawood's physical abilities.  Accordingly, this portion of his decision is not supported by substantial evidence.

**IV.**

The ALJ compared Cawood's allegations of disabling pain and reported daily activities to the objective medical evidence and concluded that her statements "concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible."  [Tr. 28] Specifically, the ALJ noted that Cawood had not sought out specialist treatment or palliative measures such as physical therapy for her fibromyalgia.  Further, the ALJ found that Dr. Maxey's treatment notes were inconsistent with Cawood's claims that her condition had significantly deteriorated. *Id.*  The ALJ further relied on Cawood's hearing testimony that she was able to perform light chores and enjoyed watching television and reading. *Id.*  Although Cawood previously claimed that she rarely left the house, she testified that she maintained her driver's license and drove about once per week.  [Tr. 42]

"Credibility determinations with respect to subjective complaints of pain rest with the ALJ."  *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).  This deference is necessary because the ALJ is charged with observing the claimant's demeanor.  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008).  It is within the province of the ALJ—not the reviewing court—to make credibility determinations.  *Rogers*, 486 F.3d at 247.  The ALJ engaged in a significant review of the record with respect to Cawood's allegations of

pain and concluded that her hearing testimony and other evidence simply was inconsistent with her allegations of disabling pain. [Tr. 27–28] The Court defers to the ALJ's assessment of the plaintiff's credibility, as it is supported by substantial evidence in the administrative record. *See Rogers*, 486 F.3d at 249.

### V.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Lois Jane Cawood's Motion for Summary Judgment [Record No. 13] is **GRANTED**, in part, to the extent that she seeks a remand for further administrative proceedings. To the extent she seeks an award of benefits, the motion is **DENIED.**

2. Commissioner Carolyn W. Colvin's Motion for Summary Judgment [Record No. 14] is **DENIED.**

3. This decision of Administrative Law Judge Tommye C. Mangus is **REMANDED** for further administrative proceedings consistent with this opinion and pursuant to sentence four of 42 U.S.C. 405(g).

This 6th day of January, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge